**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JAMES WILLIAM AUSSICKER,

        Petitioner,

v.                                 Case No. 2:08-CV-12280

CINDI CURTIN,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS
AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

      Petitioner James William Aussicker, a state prisoner currently confined at the

Carson City Correctional Facility in Carson City, Michigan, has filed a pro se petition for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of first-

degree felony murder, Mich. Comp. Laws § 750.316(1)(b), following a jury trial in the

Macomb County Circuit Court and was sentenced to life imprisonment without the

possibility of parole in 2002. In his petition (as amended), he raises claims concerning

the sufficiency of the evidence, the neutrality of the magistrate judge who issued a

search warrant, the probable cause determination, the seizure of his truck, prosecutorial

misconduct, and the effectiveness of appellate counsel. The court finds that Petitioner's

claims lack merit, are barred by procedural default, or both. The petition for a writ of

habeas corpus will therefore be denied. The court will decline to issue a certificate of

appealability.

## I. BACKGROUND

Petitioner's conviction arises from the beating death of Ben Chaney at his home in Warren, Michigan on September 13, 2001. Brian Chaney, the victim's son, testified that he saw Petitioner and Rhonda McCoy with his father at their home at 2:30 p.m. that day when he returned home from school. Petitioner had been one of their neighbors for a period of time, but had moved away four or five years previously. Brian Chaney left the house at about 2:45 p.m. to play basketball. He returned to the house with a friend at approximately 4:30 p.m. The door was locked, which was unusual. When he entered the house, he noticed that a CD cabinet and a strong box had been broken open and that his father's jar of quarters (a pickle jar which held poker money) was empty. Brian Chaney also heard strange noises from the basement. When he went downstairs, he found his father lying in a pool of blood and called 911 and his mother. His father later died at the hospital.

Christine Chaney, the victim's wife and Brian's mother, testified that her husband was 63 years old when he died. He had cancer in his right wrist and had to have a bone and some lymphoids removed in 1997. He was in remission but had lost strength in his right arm. He received social security and also sold drugs such as cocaine and prescription drugs. Christine Chaney worked full-time and did not approve of the drug dealing. She was at work when her husband was beaten. She testified that she had tried calling her husband at home at 3:10 or 3:15 p.m. and again at 3:30 or 3:45 p.m., but no one answered. She called Brian and asked him to go home and check on his dad. Brian subsequently called her and told her to come home because his father had been injured. She returned home, then went to the hospital. After consulting with doctors, she made the decision to remove her husband from life support, and he died

2

that evening.  Christine Chaney also testified that the pickle jar contained $60 to $80 worth of quarters on the morning of the incident, but was empty when she returned home.  The strong box was also intact that morning, but was broken open when she returned home.  Christine Chaney recognized Petitioner as their former neighbor but had not seen him since he moved.  She stated that Rhonda McCoy purchased drugs from her husband and owed him $600 to $700.  Another woman, Betty Ann Liddy, also purchased drugs from her husband.

Rosemary Burke, the owner of Rockie's Bar in Harper Woods, testified that Petitioner came to the bar between 4:00 and 5:00 p.m. on September 13, 2001 while she was doing her books.  He asked to exchange $30 in quarters for the same amount in bills.  Petitioner counted out the quarters for her.  He also played $30 worth of quarters in a bar slot machine for a period of time.  She said that Petitioner was dirty that day and smelled foul.

Jill Colletti, a bartender at the J.Y. Bar on East Warren in Detroit, testified that Petitioner came to the bar at approximately 4:20 p.m. on September 13, 2001.  He ordered a Pepsi and played a poker machine for half an hour.  He then asked her if she knew anyone who wanted something.  She thought he meant drugs and said no.  He left the bar at about 4:45 p.m.

Betty Ann Liddy testified that she was at the victim's home from 1:30 p.m. to about 2:30 p.m. on the day he died.  The door was unlocked and the victim waived her inside.  She purchased $10 worth of Valium from him.  A black man named Ricardo and an Italian man named Tony visited the house while she was there and left before she did.  Rhonda McCoy arrived at 2:20 or 2:30 p.m. and was at the house when she left.

Jeffrey Havrill, the victim's friend, testified that he took the victim to pick up

3

prescriptions at a pharmacy around 1:00 or 1:15 p.m. on September 13, 2001. When they returned to the victim's house at about 1:30 p.m., a truck was partially blocking the driveway and Petitioner was on the front porch knocking on the door. The victim identified him as an old neighbor. Havrill used the restroom, then left to go home and retrieve some CDs that he had borrowed from the victim. After he did so, he returned to the victim's house around 2:15 or 2:20 p.m. Petitioner and the truck were gone, but Betty Liddy was there. He returned the CDs, stayed a few minutes, and left.

Rhonda McCoy testified that she visited the victim on the day he died. She arrived shortly after 2:30 p.m. and stayed for 30 to 35 minutes. Betty Liddy and Brian Chaney were there part of the time. Petitioner, whom she did not know, came to the back door and spoke to the Chaneys. After Brian Chaney left the house, Petitioner and the victim went upstairs. Rhonda left around 3:05 or 3:10 p.m. At that time, the victim was lying on the couch and Petitioner was in the bathroom.

Anthony Korberly, a senior evidence technician with the Warren Police Department, testified that he received a radio run for the victim's home at 4:46 p.m. on September 13, 2001. He photographed the scene and collected evidence. He observed the pool of blood where the victim was found and medium blood splatters on the bottom 18 inches of the wall. The splatters indicated that the victim was struck while lying on the ground. He discovered blood in the laundry room sink, indicating that someone had used it to rinse off blood. He observed a strongbox near the bathroom which had been pried open and had three or four impact marks, as well as an empty pickle jar on a sideboard. He also found a claw hammer in the closet of the mudroom. He tested the items for fingerprints, but found no usable prints which could be matched.

Warren Police Officer Paul Westrick testified that he went to Petitioner's home on

4

September 14, 2001 and had Petitioner's truck towed to the Warren Police Station. He started and ran the truck for 45 minutes and the truck ran fine. He also recovered an open-end wrench from under the seat. He observed white powder on the end of the wrench. He also noticed that the carpet in the truck was wet. The carpet was found to be soaked through upon removal.

Dr. Werner Spitz, the Macomb County Medical Examiner, performed the autopsy on the victim, Ben Chaney. Dr. Spitz testified that the victim suffered defensive injuries to his hands and 16 blows to his head. The resulting skull fractures caused brain swelling and eventually death. He stated that the injuries were consistent with a hammer type of weapon similar to the claw hammer found at the scene. He did not think that the injuries were caused by a wrench like the one recovered from Petitioner's truck. Dr. Spitz also testified that the blood at the scene was consistent with a head wound and with the victim being struck while lying on the ground.

Michael Arrowood, a Michigan State Police tool mark identification expert, testified that he examined the victim's strongbox and the open-end wrench recovered from Petitioner's truck. He believed that the three holes in the strongbox and the marks on the broken, plastic, inner pieces of the strongbox were made with the pointed end of the wrench.

Eric Sevenak, a trace evidence technician with the Michigan State Police Crime Lab, testified that he examined white powder found on Petitioner's wrench and the insulation inside the victim's strongbox with an infrared spectrometer. He found the samples to be consistent with each other. Karl Semi, a trace evidence forensic scientist with the Michigan State Police, also examined the items with a scanning electronic microscope and reached the same conclusion.

5

Warren Police Detective Jeffery Pierog, the officer in charge of the investigation, testified that he visited the crime scene. He observed the victim's empty money clip on the basement floor, the broken strongbox near the bathroom, and the claw hammer, which looked like it had been washed, by the back door mudroom. Detective Pierog also testified that Petitioner's truck was seized on September 14, 2001 and towed to the police station. A search of the home revealed no evidence.

Detective Pierog interviewed Petitioner at the police station that same day. At first, Petitioner denied knowing the victim. Then he said, "you mean old man Ben?" Petitioner said that he moved from the neighborhood five years ago. He eventually admitted visiting the victim's home the previous day and meeting Brian Chaney. He knew that Ben Chaney sold drugs, but said that he did not go there for that purpose. Petitioner said that he was at the house for 20 to 30 minutes. While he was there, he picked up the strongbox and shook it to see what was inside, but Ben told him to put it down. Petitioner did not remember what he was wearing, but recalled that he parked in an alley near some railroad tracks about a quarter mile from the house.

Detective Pierog also testified that Rockie's Bar is three or four miles from the victim's house and that the J.Y. Bar is another three miles away. Both bars are within a 10 to 12-minute drive from the house. The parties stipulated that no useful DNA samples were found on Petitioner or in his truck.

Petitioner did not testify at trial, but presented several defense witnesses. Dr. Sawait Kanluen, a Wayne County Medical Examiner, testified that he reviewed the police photographs and the autopsy report. Based upon those materials, he believed that a blunt elongated instrument was the murder weapon. He did not believe that a claw hammer was used. He also testified that the defensive wounds indicated some

6

struggle and that the perpetrator would have some blood on him. On cross-examination, Dr. Kanluen stated that the cause of death was blunt force trauma to the head. He indicated that it was possible that the wounds were caused by the wrench found in Petitioner's truck or by a hammer held at a certain angle, but he did not know.

Kathleen Marie Lee, the victim's neighbor, testified that she saw Rhonda McCoy go to the victim's back door at 3:10 p.m. on September 13, 2001. Betty Liddy's van was still in front of the house and it may have left at 3:50 p.m. On cross-examination, she admitted that she was unsure of the time she saw Rhonda at the house.

Frank Pelione, another neighbor, testified that he saw Rhonda McCoy's car at the victim's house at 2:20 p.m. that day and it was still there at 3:30 p.m. He never saw Rhonda. On cross-examination, he indicated that the times were estimates.

Steven Coots, a teenager, testified that he saw Rhonda McCoy pull up to the victim's house and go to the front door between 3:30 to 4:00 p.m. on September 13, 2001. He explained that he had gotten out of school at 2:52 p.m., talked with friends for a half hour, and was on his way to a friend's house at the time. He acknowledged that he did not wear a watch. He also had not seen Rhonda McCoy before that day.

Following deliberations, the jury found Petitioner guilty of first-degree felony murder. The trial court subsequently sentenced him to the mandatory term of life imprisonment without the possibility of parole.

Petitioner appealed as of right to the Michigan Court of Appeals, asserting that the prosecution failed to present sufficient evidence to support his conviction. The Michigan Court of Appeals affirmed his conviction. *People v. Aussicker*, No. 245058, 2004 WL 1459563 (June 29, 2004) (unpublished). The Michigan Supreme Court denied leave to appeal. *People v. Aussicker*, 692 N.W.2d 840 (Mich. 2005).

7

Petitioner subsequently filed a motion for relief from judgment with the state trial court raising several claims, including claims that an affidavit given in support of a search warrant contained false statements and was invalid, that his truck was unlawfully seized, that the prosecutor engaged in misconduct, and that counsel was ineffective. The trial court denied the motion finding that the claims lacked merit and that counsel had good cause for not raising them.  *People v. Aussicker*, No. 2002-0282-FH (Macomb Co. Cir. Ct. July 5, 2006) (unpublished).  Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which was denied "for lack of merit in the grounds presented."  *People v. Aussicker*, No. 278788 (Mich. Ct. App. Feb. 20, 2008) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."  *People v. Aussicker*, 753 N.W.2d 201 (Mich. 2008).

Petitioner thereafter filed an initial and amended petition for a writ of habeas corpus with this court in which he raises the following claims:

I.      Denial of the right to due process by conviction upon insufficient evidence.

II.     Denial of the right to a neutral and detached probable cause determination.

III.    Denial of the right to a neutral and detached magistrate via false statements.

IV.     Denial of the right to a warranted seizure of his truck.

V.      Denial of due process of law resulting from prosecutorial misconduct.

VI.     He was denied his due process right to effective assistance of appellate counsel.

Respondent has filed an answer, contending that the claims lack merit and/or are barred by procedural default.  Petitioner has filed a reply to that answer.

## II.  STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date.  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997).  The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's

9

case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694.  However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'"  *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

10

## III.  DISCUSSION

### A.  Insufficient Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his first-degree felony murder conviction.  Petitioner claims that the prosecution failed to present sufficient evidence linking him to the murder.  Respondent contends that this claim lacks merit.

In *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the United States Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319 (emphasis in original); *see also DeLisle v. Rivers*, 161 F.3d 370, 389 (6th Cir. 1998).  The court must adhere to this standard within the framework of 28 U.S.C. § 2254(d).  *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).  The *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Jackson*, 443 U.S. at 324 n. 16.  "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim."  *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Under Michigan law, a person who commits murder during the perpetration of a felony is guilty of first-degree murder.  Mich. Comp. L. § 750.316.  The elements of felony murder are:  (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies

11

specifically enumerated in the statute.  *Matthews v. Abramajtys*, 319 F.3d 780, 789 (6th

Cir. 2003) (citing *People v. Carines*, 460 Mich. 750, 759, 597 N.W.2d 130 (1999)).  The

facts and circumstances of the killing may give rise to an inference of malice, including

evidence that the defendant used a deadly weapon.  *Id*.  The elements of the predicate

felony of larceny from a person are:  (1) the taking and carrying away of personal

property, (2) from the victim's presence or person, (3) with felonious intent, and (4)

without the owner's consent.  *People v. Gimotty*, 216 Mich. App. 254, 257-58, 549

N.W.2d 39 (1996).

　　　　Applying the *Jackson* standard, the Michigan Court of Appeals rejected

Petitioner's challenge to the sufficiency of the evidence, stating in relevant part:

> The evidence was sufficient to support the conviction. Viewed in a light
> most favorable to the prosecution, the evidence established that
> defendant was the last person to be seen with the decedent. A
> reasonable juror could conclude that the attack took place between the
> short time that defendant was left alone with the decedent, and the time
> the decedent failed to answer his wife's phone call. A wrench found in
> defendant's truck was identified as consistent with the tool used to break
> into the decedent's strong box, and defendant was seen shortly after the
> attack with a large number of quarters, coinciding with the quarters
> missing from the decedent's house. Finally, defendant gave inconsistent
> statements to the police, first denying any knowledge of or contact with
> the decedent, then gradually admitting that he knew the decedent, that he
> was at the decedent's house, and that he touched the strongbox while in
> the house. A rational finder of fact could conclude that the elements of
> felony murder were proven beyond a reasonable doubt.

*Aussicker,* 2004 WL 1459563 at *1.

　　　　This court agrees.  There is no doubt of any kind that the decedent's wounds

evince an attack by someone acting "with the intent to kill," and little doubt, if any, that

the killing took place in connection with a larceny.  Beyond this, any rational trier of fact

could have found that the prosecution proved, beyond a reasonable doubt, that

Petitioner was the person who committed the crime.  The trial testimony established

12

that Petitioner was the last person seen with the victim. A wrench found in Petitioner's truck was consistent with what was used to break into the victim's strong box. The truck's carpet was soaking wet, thereby indicating that Petitioner made an effort to eradicate incriminating evidence. Petitioner was proven to have been in possession of property very shortly after the crime that was consistent with property missing from the victim's home, as he exchanged $30 worth of quarters for bills and gambled another $30 worth of quarters at a nearby bar. Petitioner also asked a bartender at another bar if she knew anyone "who needed anything," which coincided with the fact that the victim occasionally illegally sold prescription or other drugs; such things may have been taken from the victim's home. Lastly, Petitioner was evasive with the police and initially denied knowing the victim but later acknowledged his recent presence and gave an odd explanation for the possibility that his fingerprints might be detected on the victim's property. Such circumstantial evidence, taken together, is potent and points directly at Petitioner. It is certainly sufficient to establish that he was present and committed the crime.

Petitioner's first claim essentially challenges the inferences the jury drew from the evidence at trial. However, it is well-settled that "[a] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). It is the job of the jury, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618. The state court's decision is neither contrary to nor an unreasonable application of federal law or the facts. Habeas relief is not warranted on this claim.

13

## B.  Procedural Default of Habeas Claims II-V

Petitioner also asserts that he is entitled to habeas relief due to false statements made in an affidavit to obtain a search warrant, the improper seizure of his truck, and prosecutorial misconduct.  Respondent contends that these claims are barred by procedural default.

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules.  *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977).  The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001).  "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S. 255, 263-64 (1989).  The last *explained* state court judgment should be used to make this determination.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id.*

Petitioner first presented these claims to the state courts in his motion for relief from judgment.  The Michigan Supreme Court denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such

14

grounds previously and actual prejudice resulting therefrom. *See* Mich. Ct. R. 6.508(D)(3). The Michigan Supreme Court's decision, while brief, was based upon an independent and adequate state procedural rule. *See Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000) (Michigan Supreme Court's citation to MCR 6.508(D) to deny relief constitutes a reasoned decision invoking a procedural bar); *see also Guilmette v. Howes*, _ F.3d _, 2010 WL 86339, *3 (6th Cir. Jan. 12, 2010) (relying on *Munson v. Kapture*, 384 F.3d 310 (6th Cir. 2004), and ruling that habeas petitioner's claim was procedurally defaulted because "although the state trial court on collateral review addressed the merits of [the] claim, both the state appellate and supreme courts denied the claim pursuant to Mich. Ct. R. 6.508(D)"); *Alexander v. Smith*, 311 F.3d 875, 883-84 (6th Cir. 2009) (confirming that *Simpson* is binding precedent); *cf. Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007), *cert. den.* 128 S. Ct. 1897 (2008) (ruling that it may be appropriate to look to the state trial court's decision denying a motion for relief from judgment to determine whether the appellate courts relied upon a procedural default in denying relief pursuant to MCR 6.508(D)); *Abela v. Martin*, 380 F.3d 915, 921-23 (6th Cir. 2004) (distinguishing case where Michigan Court of Appeals denied relief for lack of merit). In this case, the Michigan Supreme Court relied upon a state procedural default in denying relief on these claims.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 753; *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts ineffective assistance of appellate counsel as cause to excuse

15

his default.  In order to establish ineffective assistance of counsel, Petitioner must

show "that counsel's performance was deficient . . . [and] that the deficient

performance prejudiced the defense."  *Strickland v. Washington*, 466 U.S. 668, 687

(1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  In determining whether

counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances,
> the identified acts or omissions were outside the wide range of
> professionally competent assistance . . . .  At the same time, the court
> should recognize that counsel is strongly presumed to have rendered
> adequate assistance and made all significant decisions in the exercise of
> reasonable professional judgment.

*Strickland*, 466 U.S. at 690.  Therefore, judicial scrutiny of counsel's performance must

be "highly deferential."  *Id.* at 689.  The defense is prejudiced only if "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different."  *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional

right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v.

Barnes*, 463 U.S. 745, 751 (1983).  The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and
> impose on appointed counsel a duty to raise every "colorable" claim
> suggested by a client would disserve the ... goal of vigorous and effective
> advocacy .... Nothing in the Constitution or our interpretation of that
> document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are

"properly left to the sound professional judgment of counsel."  *United States v. Perry*,

908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy"

is the "process of 'winnowing out weaker arguments on appeal and focusing on' those

more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented a legitimate issue – insufficient evidence – on direct appeal. Petitioner has not shown that appellate counsel's strategy in presenting that claim and not raising the claims contained in the motion for relief from judgment was deficient or unreasonable. Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

A federal court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983). Nonetheless, the court notes that Petitioner cannot establish prejudice as his claims lack merit for the reasons stated by the state trial court in denying his motion for relief from judgment,[1]

---

[1]The fact that the trial court denied relief on these claims (and found that counsel had good cause not to raise them) further supports the argument that appellate counsel was not ineffective for not raising the issues on direct appeal.

*see Aussicker, supra*, slip op. at *3-6, and as more fully discussed *infra*.[2]

Lastly, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### C. Merits of Habeas Claims II-V

### 1. Search and Seizure Claims

In his second through fourth habeas claims, Petitioner challenges the validity of the search warrants issued in his case, as well as the seizure of his truck. Respondent contends that these claims are not cognizable upon federal habeas review.

Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). A court must perform two

---

[2]Given the varying nature of the Sixth Circuit's procedural default case law and the fact that the lower state courts denied relief for lack of merit in this case, the court shall alternatively address the merits of these claims. *See* discussion *infra.*

2:08-cv-12280-RHC-SDP   Doc # 22   Filed 01/28/10   Pg 19 of 24   Pg ID 1276

distinct inquiries when determining whether a petitioner may raise a claim of illegal arrest in a habeas action.  First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim.  Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism."  *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim."  *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005).  This procedural mechanism is a motion to suppress, ordinarily filed before trial.  *See People v. Ferguson*, 135 N.W.2d 357, 358-59 (Mich. 1965) (describing the availability of a pre-trial motion to suppress); *see also People v. Harris*, 291 N.W.2d 97, 99 (Mich. App. 1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal). Consequently, Petitioner is entitled to relief on this issue only if he establishes that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism.  Petitioner has not done so.  The record reveals that Petitioner raised the search and seizure issues prior to trial and again during trial.  The trial court denied the motions to suppress.  Petitioner did not pursue the issues on direct appeal, but raised them again in his motion for relief from judgment.  The trial court conducted a review of the Fourth Amendment issues and concluded that Petitioner was not entitled to relief.  The Michigan Court of Appeals also indicated that the claims lacked merit in denying leave to appeal, and the Michigan Supreme Court also denied leave to appeal.

19

Given this record, it is clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment issues and that he received all the process he was due. While Petitioner challenges the state courts' decisions and claims that he should have been given an evidentiary hearing, he has not shown that the procedures were flawed such that he was unable to properly litigate the issues.  Petitioner had a full and fair opportunity to litigate his Fourth Amendment claims.  Accordingly, his illegal search and seizure claims are not cognizable on federal habeas review pursuant to *Stone v. Powell*.  Habeas relief is not warranted on these claims.

### 2.  Prosecutorial Misconduct Claim

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by vouching for the credibility of tool mark expert witness Michael Arrowood, bolstering his testimony, and expressing a personal belief in Petitioner's guilt by declaring the evidence "indisputable."  Respondent did not discuss the substantive merits of this issue.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974).

The Sixth Circuit has adopted a two-part test for deciding whether prosecutorial misconduct violates a defendant's due process rights.  *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases).  First, the court must determine whether the challenged statements were indeed improper.  *Id.* at 452.  Upon a finding of

20

impropriety, the court must decide whether the statements were flagrant.  *Id*.
Flagrancy is determined by an examination of four factors: 1) whether the statements
tended to mislead the jury or prejudice the accused; 2) whether the statements were
isolated or among a series of improper statements; 3) whether the statements were
deliberately or accidentally before a jury; and 4) the total strength of the evidence
against the accused.  *Id*.; *see also Boyle v. Milton*, 201 F.3d 711, 716 (6th Cir. 2000)
(citing *United States v. Francis*, 170 F.3d 546, 540-550 (6th Cir. 1999)).  "[T]o
constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced
and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as
probably to prejudice the defendant.'"  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir.
1997) (citations omitted).

    Petitioner focuses on one word in the prosecutor's argument –the prosecutor
referring to Michael Arrowood's expert testimony as "indisputable"– and asserts that
the argument constituted improper vouching or bolstering and the expression of a
personal belief in guilt.  It is well-settled that it is improper for a prosecutor to express
his or her own personal beliefs and opinions concerning the credibility of a witness.
*See United States v. Young*, 470 U.S. 1, 9-10 (1985); *United States v. Modena*, 302
F.3d 626, 634 (6th Cir. 2002).  Such statements are improper because they can
convey the impression that the prosecutor has evidence not presented to the jury
which supports the charge against the defendant thereby infringing upon the
defendant's right to be judged solely based upon the evidence presented and because
the prosecutor's opinion carries with it the imprimatur of the Government and may
induce the jury to trust the Government's judgment rather than its own.  *See United
States v. White*, 58 F. App'x 610, 617-18 (6th Cir. 2003) (citing cases).

21

2:08-cv-12280-RHC-SDP   Doc # 22   Filed 01/28/10   Pg 22 of 24   Pg ID 1279

The state trial court denied relief on this claim stating in relevant part:

> In the instant matter, the comments complained of – that Michael
> Arrowood's testimony was irrefutable or indisputable – do not suggest the
> prosecutor either had any special knowledge that Arrowood was testifying
> truthfully or was attempting to bolster Arrowood's credibility. The
> prosecutor was merely arguing as to the weight to be given the evidence
> in light of the lack of contrary testimony. Moreover, defendant
> acknowledges Arrowood admitted during cross-examination that his
> (Arrowood's) findings represented his opinions and were not necessarily
> based on an exact science. In any event, the jury was repeatedly
> instructed that comments and arguments of counsel were not evidence.
> Hence, the prosecutor's comments did not deprive defendant of a fair
> trial.

*Aussicker*, No. 2002-0282-FH, slip op. at *5.[3] This decision is neither contrary to

Supreme Court precedent nor an unreasonable application of federal law or the facts.

The prosecutor's comments were based upon the testimony presented at trial. A

prosecutor has leeway to argue the evidence and reasonable inferences therefrom.

*See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). Moreover, a prosecutor may

argue from the facts that a witness is (or is not) worthy of belief. *See Portuondo v.

Agard*, 529 U.S. 61, 69 (2000). To assert that certain evidence is "indisputable" is

mere argument that describes an asserted characteristic of the evidence. It neither

personally vouches for a witness nor express a personal belief in guilt. Petitioner has

failed to establish that the prosecutor's argument was improper. Furthermore, even if

the prosecutor erred, the comments were not so flagrant as to render Petitioner's trial

fundamentally unfair. Any potential prejudice was alleviated by the trial court's

instructions. Habeas relief is not warranted on this claim.

### D.  Ineffective Assistance of Appellate Counsel Claim

---

[3]The Michigan Court of Appeals also indicated that this claim lacked merit in denying
leave to appeal on collateral review. *See Aussicker*, No. 278788, slip op. at *1.

Lastly, Petitioner asserts that appellate counsel was ineffective for failing to raise the issues contained in his motion for relief from judgment on direct appeal. Respondent did not address this issue as a distinct claim. The state trial court denied relief on this claim, essentially finding that Petitioner could not establish that appellate counsel was ineffective because the underlying claims lacked merit. *See Aussicker,* No. 2002-0282-FH*,* slip op. at \*6.[4] Given the foregoing analysis, this court agrees and concludes that Petitioner has failed to establish that appellate counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted on this claim.

## IV.  CERTIFICATE OF APPEALABILITY

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. When a district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner

---

[4]Again, the Michigan Court of Appeals indicated that this claim lacked merit in denying leave to appeal on collateral review. *See Aussicker*, No. 278788, slip op. at \*1.

states a valid claim of the denial of a constitutional right, and that jurists of reason
would find it debatable whether the district court was correct in its procedural ruling.
*See Slack*, 529 U.S. at 484-85.

Having reviewed the matter and for the reasons stated, the court concludes that
Petitioner has not made a substantial showing of the denial of a constitutional right as
to his habeas claims and that reasonable jurists could not find the court's procedural
ruling debatable.  The court therefore declines to issue a certificate of appealability.

## V.  CONCLUSION

For the reasons stated, the court concludes that Petitioner is not entitled to
federal habeas relief on the claims contained in his petition.

Accordingly, IT IS ORDERED that the petition for a writ of habeas corpus is
DENIED and the court DECLINES to issue a certificate of appealability.


  S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  January 28, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, January 28, 2010, by electronic and/or ordinary mail.

  S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522